IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

SHANE AYERS,

    Plaintiff,

v.                                          Case No. 1:24-cv-64-AW-MJF

EPIC GAMES, INC., et al.,

    Defendants.

_____/

## ORDER ON MOTIONS TO COMPEL ARBITRATION

Shane Ayers, on his own behalf and on behalf of his child, sued several companies that produce, develop, and host video games. His contention, in a nutshell, is that these companies caused his child's video-game addiction. He alleges strict liability and negligence. ECF No. 125.

Two Defendants, Epic Games and Nintendo, moved to compel arbitration. ECF Nos. 77, 83. Having considered the motions, Ayers's responses, ECF Nos. 127, 128, and the replies, ECF Nos. 137, 139, I now grant Nintendo's motion and direct the clerk to set a hearing on Epic Games' motion.

### I.

Nintendo's position is that Ayers accepted Nintendo's End-User License Agreement (EULA) when he set up a Nintendo Switch on which the child played games. ECF No. 84 at 9. Nintendo further maintains that Ayers accepted Nintendo's Account User Agreement (AUA) when he created an account for himself and a

1

subsidiary child account for his child. *Id.* There is no dispute that these two agreements—the EULA and the AUA—contain arbitration provisions. And there is no dispute that Ayers set up the accounts, like Nintendo alleges. ECF No. 128 at 6 ("Ayers does not dispute that he set up the accounts for [the child]."); *see also* ECF No. 126-1 ¶ 7. Ayers's argument is that he did not have fair notice that the agreements required him or his child to arbitrate future claims. He also argues the agreements are unconscionable. These arguments are unpersuasive.

## II.

Whether a party has agreed to arbitrate is a matter of state contract law. *Bazemore v. Jefferson Cap. Sys., LLC*, 827 F.3d 1325, 1329 (11th Cir. 2016). Nintendo argues Washington law should apply under the contract's choice-of-law provision. ECF No. 84 at 20. Ayers, though, contends Florida law applies. ECF No. 128 at 9-10. His point, which has logical appeal, is that we should not apply a contract's choice-of-law provision to determine whether there was a contract in the first place. *Id.* Nintendo has no real objection to applying Florida law, saying "it makes no difference whether" Washington or Florida law controls. ECF No. 84 at 20-21 (citing both Washington and Florida cases). Under these circumstances, I will apply Florida law, consistent with Ayers's position. Under that law, Ayers cannot prevail.

### III.

Ayers first argues there is no contract because he never had adequate notice of the EULA's or AUA's terms. ECF No. 128 at 6. Under Florida law, parties cannot form contracts without mutual assent. *Gibson v. Courtois*, 539 So. 2d 459, 460 (Fla. 1989). Ayers maintains there can be no mutual assent without his having notice of the agreements' terms. ECF No. 128 at 14. But the record shows he did have notice.

In the context of internet contracts, Florida courts have recognized two broad categories: clickwrap and browsewrap. In both categories, the contract terms are available on the website, either directly or through a hyperlink. Clickwrap agreements require users to check a box acknowledging agreement; browsewrap agreements purport to make continued use of the site acquiescence to the terms. *Vitacost.com, Inc. v. McCants*, 210 So. 3d 761, 762 (Fla. 4th DCA 2017).

Clickwrap agreements are generally enforceable. *Massage Envy Franchising, LLC v. Doe*, 339 So. 3d 481 (Fla. 5th DCA 2022) (citing *Vitacost.com*, 210 So. 3d at 762); *see also Valiente v. StockX, Inc.*, 645 F. Supp. 3d 1331, 1338 (S.D. Fla. 2022) (quoting *Salco Distribs., LLC v. iCode, Inc.*, 2006 WL 449156, at *3 (M.D. Fla. Feb. 22, 2006) ("In Florida and the federal circuits . . . click-wrap agreements are valid and enforceable contracts.")). And the agreements here, as Nintendo has

3

shown, were clickwrap.[1] Nintendo required Ayers to check a box signaling his agreement to the terms before he could create an account. ECF No. 113-2 at 4-7. Nintendo's evidence shows, and Ayers has acknowledged, Ayers did create an account.[2] ECF No. 126-1 ¶ 7. Thus, he agreed to the terms.

In his affidavit, Ayers says he does "not recall" seeing or agreeing to any terms. ECF No. 126-1 ¶¶ 8-9. But his not recalling is not competent evidence that there was no agreement or that he did not complete the process Nintendo requires. He has thus not created any issue of material fact that would preclude compelling arbitration. *See Hearn v. Comcast Cable Commc'ns, LLC*, 992 F.3d 1209, 1215 n.3 (11th Cir. 2021) (explaining that a standard similar to the summary-judgment standard applies to motions to compel arbitration).

---

[1] Ayers even refers to the AUA as a "clickwrap agreement" at one point. *See* ECF No. 128 at 6. But he argues at other points that both agreements are another species of internet contract he calls a "sign-in wrap agreement," *id.* at 14 n.4, because they "advise the user that he or she is agreeing to the terms of service when registering or signing up." *See Hawkins v. CMG Media Corp.*, 2024 WL 559591, at *3 (N.D. Ga. Feb. 12, 2024) (quoting *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 76 (2d Cir. 2017)). The sign-in process here does not replace the requirement that the user affirmatively agree to the terms; it instead serves as an additional notice that the customer must agree to the EULA and AUA to proceed.

[2] Ayers argues at one point that the boxes were prechecked. ECF No. 128 at 6. Counsel's argument is not evidence, and the evidence is that before a user can create an account, he "must affirmatively check a box confirming" agreement. ECF No. 84-1 ¶ 31. Regardless, Ayers acknowledges later that "the user is required to confirm or 'click' the checkmark." ECF No. 128 at 6. Moreover, Ayers has not shown that a "prechecked" box would make any difference—either way he acknowledged agreement.

Similarly, even if Ayers did not read all the terms before agreeing to them, that would not preclude arbitration. *See Paul Gottlieb & Co. v. Alps S. Corp.*, 985 So. 2d 1, 7 (Fla. 2d DCA 2007) ("Florida law has never excused a party from a contract simply because it failed to read the contract terms."); *Valiente*, 645 F. Supp. 3d at 1338 ("That Plaintiff may not have actually read the Terms before affirmatively assenting to them is not dispositive."). In short, Ayers had adequate notice.[3]

Ayers next argues that even if there was a contract to arbitrate *his* claims, there was none to arbitrate his *child's* claims. But under Florida law, "[p]arents who choose to allow their children to engage in . . . activities may also legitimately elect on their children's behalf to agree in advance to arbitrate a resulting tort claim if the risks of these activities are realized." *Glob. Travel Mktg., Inc. v. Shea*, 908 So. 2d 392, 404 (Fla. 2005). Here, Ayers agreed to arbitrate not only on his own behalf, but also on behalf of his child, for whom Ayers created an account.

Ayers also contends he need not arbitrate his child's claims "because the arbitration clause itself removes any other representative action from the confines of arbitration." ECF No. 128 at 18 (internal quotation omitted). The agreements say that any "arbitration shall be conducted by the parties in their individual capacities

---

[3] As Ayers acknowledges, clickwrap agreements are generally enforceable based on the simple fact that the user clicked to accept the agreement. ECF No. 128, at 16. Thus, Ayers's reliance on the font size, color, and typeface of the buttons, *see id.*, is unhelpful.

only and not as a class action or other representative action." ECF No. 84-2 at 4-5, 13. But Ayers's action on his child's behalf is not a "representative action" as the agreement uses that term. The provision appears under the heading "Dispute Resolution; Binding Individual Arbitration; Class Action Waiver," and the next sentence refers to the "class-action waiver set forth in the preceding sentence." ECF No. 84-3 at 4-5, 13. Moreover, "class action" and "representative action" are often considered synonymous. *See Class Action*, *Black's Law Dictionary* (12th ed. 2024) ("[a]lso termed *class suit, representative action*"); *Representative Action, Black's Law Dictionary* (12th ed. 2024) (listing "CLASS ACTION" as the first definition).

Regardless, even if Ayers had the right interpretation—and his claim for his child were a "representative action"—that would not preclude arbitration. It would simply mean the arbitration could not proceed with Ayers representing his child's claims. The agreement does not say parties can freely bring "representative actions" in court. It says "all disputes . . . shall be finally settled by binding arbitration." ECF No. 84-2 at 4, 13. It then says that the required arbitrations cannot be pursued as class actions or representative actions. *Id.*

In sum, Nintendo has shown a validly formed contract that requires Ayers to arbitrate all claims—those on his own behalf and those on his child's behalf.

6

## IV.

Ayers's final argument is that if the agreements were validly formed, they are nonetheless unenforceable because they are unconscionable. This is a weak argument, but it is one for the arbitrator—not the court.

The EULA and AUA each include delegation provisions. ECF No. 84-2 at 4, 13. And when an arbitration agreement delegates the threshold question of arbitrability to the arbitrator, courts must leave "any challenge to the validity of the Agreement as a whole for the arbitrator," resolving only disputes as to the delegation provision itself. *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 72 (2010). It is generally not enough to allege that the delegation provision is unconscionable for the same reasons the contract is. *See Parnell v. CashCall, Inc.*, 804 F.3d 1142, 1148 (11th Cir. 2015). Here, Ayers offers no reason beyond his general unconscionability arguments why the delegation provisions are unconscionable.

Last, to the extent Ayers contends the arbitration agreements do not cover his and his child's claims, *see, e.g.*, ECF No. 128 at 28-29, those scope arguments are also questions for the arbitrator under the delegation clause. *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 68-69 (2019).

## CONCLUSION

Nintendo's motion to compel arbitration (ECF No. 83) is GRANTED. All claims against Nintendo are stayed, and the parties must arbitrate their disputes

under the terms of the arbitration agreement. No later than the last business day of each June and December, starting June 2025, Plaintiff must file a status report regarding the progress of the arbitration. Failure to do so may lead to dismissal.

The court has determined that a hearing would be useful as to Epic's motion to compel (ECF No. 77). The clerk will set that hearing in Gainesville for a date in the first half of January.

SO ORDERED on December 13, 2024.

s/ *Allen Winsor*
United States District Judge
